**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:15CV-00402-JHM**

**DEVAL BLACKWOOD**                                                                     **PLAINTIFF**

**V.**

**UNITED STATES OF AMERICA**                                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, United States of America, to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for summary judgment pursuant to Fed. R. Civ. P. 56 [DN 12].  Fully briefed, this matter is ripe for decision.

**I.  BACKGROUND**

This action arises from the denial of benefits under the Traumatic Servicemembers' Group Life Insurance Program ("TSGLI") by the United States Army Board for Correction of Military Records ("ABCMR" or "Board").  Plaintiff is a current member of the United States Army who suffered a neck injury after falling approximately six feet onto his neck during an obstacle training course.  Plaintiff filed a claim for benefits under the TSGLI on April 20, 2012. The Army denied Plaintiff's claim for benefits on the basis that Plaintiff was unable to provide sufficient medical documentation to support his claim for loss of ability to independently perform two or more activities of daily life ("ADL") for at least 30 consecutive days.  After several administrative appeals and a final denial, Plaintiff filed suit against the United States on May 23, 2015.  The United States now moves to dismiss for lack of subject matter jurisdiction. In the alternative, the United States moves for summary judgment.

## II. SUBJECT MATTER JURISDICTION

"The Traumatic Servicemembers' Group Life Insurance program (the "Program" or "TSGLI") is an automatic rider to the Servicemembers' Group Life Insurance Program, codified at 38 U.S.C. §§ 1970–1980A." Koffarnus v. United States, 2016 WL 1261155, *1 (W.D. Ky. Mar. 30, 2016).  "The Program provides a benefit when a servicemember suffers a traumatic injury."  Id. (citing 38 U.S.C. § 1980A).  The statute provides that "[t]he district courts of the United States shall have original jurisdiction of any civil action or claim against the United States" brought under the Servicemember's Group Life Insurance Program. 38 U.S.C. § 1975.

The United States argues that the Court lacks subject matter jurisdiction over Plaintiff's claims because the complaint's prayer of relief seeks a judgment of money damages.  Contrary to the United States' argument, Plaintiff requests specific relief for statutory benefits to which he alleges he is entitled, not money or compensatory damages.  Furthermore, even if a portion of the relief Plaintiff requests is inappropriate, subject matter jurisdiction is not destroyed in the present case.  The Court has subject matter jurisdiction under 38 U.S.C. § 1975 to hear Plaintiff's claim for alleged wrongful denial of benefits under the TSGLI.  Koffarnus, 2016 WL 1261155, *1.

## III.  SUMMARY JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U .S. 242, 247–48 (1986).

## IV.  DISCUSSION

### A.  Benefit Application and Appeals

On December 12, 2011, Plaintiff was injured while participating in an obstacle course when he fell six feet, landing directly on his head.  Upon impact, Plaintiff experienced whole body paralysis.  He was placed on a spine board with cervical spine immobilization and transported by ambulance to Darnall Army Community Hospital.  Upon arriving at the hospital, Plaintiff reported that when he fell, he felt immediate pain in his neck, as well as numbness and tingling in both upper extremities.  CT scans of his cervical spine revealed fractures of the C3, C6, and C7.  Plaintiff was transferred to Scott and White Memorial Hospital on December 12, 2011.  Upon arrival, additional CT scans were taken revealing C3 spinous process into the laminar fracture, a C7 superior facet fracture, and a spinal cord contusion from edema.  CAR 100-101.  Orthopedic specialists placed Plaintiff in a rigid cervical collar.  He was instructed to follow up with the orthopedic clinic in a week.  Plaintiff was discharged on December 14, 2011, having been hospitalized for three days. <u>Id</u>.

On December 20, 2011, Plaintiff was seen for a follow up at Scott and White Orthopedic Clinic by Dr. Christopher Chaput for known cervical fractures as well as a probable cord contusion/neuropraxia.  CAR 919.  Dr. Chaput observed that Plaintiff was "able to stand and ambulate, and his strength is good with the exception of some very trace weakness in his hand intrinsics." <u>Id</u>. At the appointment, Plaintiff reported that he had decreased sensation diffusely in his right hand that is 50% decrease from normal and about 20 % decrease from normal in his left

hand. Plaintiff was instructed to follow up in 2 weeks to ensure that his fractures were staying stable. Id.

Plaintiff presented to Integrity Rehab & Home Health for an initial examination on January 16, 2012. A functional evaluation revealed that "[p]atient has several limitations in basic functional mobility such as bathing dressing and grooming. All ADLs are limited and patient is not performing job duties [a]t this time." CAR 920. The record indicated that prior to the injury, he was "independent in . . . ADLs." Id. The record further reflects that at that time his functional limitations was "Self Care, ADLs, Reaching/Pushing/Pulling, Lifting/Carrying, Sitting/Standing, Bending/Squatting." Id. Additionally, the record noted that "[a]ll active movements were limited by over 75%." Id.

On or about February 6, 2012, Dr. Chaput removed Plaintiff's rigid cervical collar, but instructed him not to do active range of motion (AROM) in the cervical spine until his next six week checkup. CCR 336. On February 22, 2012, Plaintiff returned to Integrity Rehab. The Plaintiff noted that his range of motion had improved, but that the tingling in his arms was much worse. CAR 327. The record indicated that "[p]atient has several limitations in basic functional mobility such as bathing dressing and grooming. All ADLs are limited and patient is not performing job duties [a]t this time" and, once again, that "[a]ll active movements were limited by over 75%." CAR 329. "Laying" was listed as a chief aggravating factor. CAR 329.

Records from Integrity Rehab dated March 26, 2012, reflect that Plaintiff's range of motion was improving, but that he was experiencing a worsening tingling sensation in his arms. CAR 306. The record further provides that "although [Plaintiff] was under restrictions preventing him from moving his cervical spine proper, he has been able to make gains in his overall should strength while healing in the cervical spine proper." Id. Under the Precautions

4

section, the record indicates that "fractures now healed however has spinal cord compression." Id.   Under the Assessment/Diagnosis section, the record notes that Plaintiff "has made some progress in therapy; however, it has been slow due to the normal healing process.  In addition, the first 6 weeks were under very limited restrictions for NO cervical AROM. Consequently, we were concentrating on the shoulders/biceps/triceps." Id.

On April 14, 2012, -- over 120 days since the accident -- Plaintiff received an additional MRI at Darnall Hospital.  The MRI results noted that the posterior element fracture at C3 "as not well-seen on current examination, likely reflecting healing." CAR 924.

Plaintiff submitted his application for TSGLI benefits on May 12, 2012.  At Part B of the application, entitled Medical Professional's Statement, Dr. Chris Chaput, Plaintiff's treating orthopedic surgeon at Scott and White Orthopedic Clinic, indicated that Plaintiff had ongoing inabilities to bathe independently, dress independently, eat independently, toilet independently, and transfer independently beginning on December 15, 2011, all of which requiring hands-on and stand-by assistance. CAR 14-16.[1]  Dr. Chaput certified that he had observed Plaintiff's loss. Plaintiff submitted medical documents as well as a letter from his wife dated April 30, 2012. CAR 039.   The application was denied on June 18, 2012.

With the assistance of counsel, Plaintiff submitted a request for reconsideration of the denial of his TSGLI claim to U.S. Army Human Resources Command on April 25, 2013.  Dr. Dennis Hopkins prepared a new Part B provider statement indicating that Plaintiff had an inability to perform at least two ADLs for over 120 consecutive days.  Dr. Hopkins opined that Plaintiff had an inability to independently bathe and dress from December 12, 2011 to April 19, 2012.  Dr. Hopkins noted that Plaintiff needed assistance "to bathe lower body and dry and

---

[1] Dr. Chaput indicated the end date for requiring hands-on or stand-by assistance for bathing and dressing were February 17, 2012 and February 20, 2012 respectfully.

dress" and "to dress lower body and tie shoes." CAR 131.  Dr. Hopkins noted that he rendered this opinion from a review of the patient's medical records. CAR 133.

Dr. Benjamin G. Withers, a TSGLI Program Physician Consultant, conducted a review of the medical records and opined that the "[s]ubmitted documents do not indicate that the injury rendered the claimant incapable of performing an ADLs at day 16 after [the injury], let alone for 30 or 120 days, per TSGLI guidelines." CAR 118.

The Army's Human Resources Command ("HRC") denied the benefits on August 8, 2013, stating that "[t]he medical documentation you submitted did not indicate that your injuries rendered you incapable of performing the ADLs of bathing or dressing that are covered by TSGLI standards for 30 consecutive days or greater.  If the Soldier is able to perform the activity by the use of accommodating equipment/adaptive measures (such as a PDA, cane, crutches, wheelchair, etc.), then the Soldier is considered able to independently perform the activity." CAR 178.

Plaintiff filed another appeal on October 4, 2013.  The appeal was denied by letter of December 23, 2013, indicating that "[t]he medical documentation you submitted did not indicate that your back injury rendered you incapable of performing the ADLs of bathing or dressing that are covered by TSGLI standards for 30 consecutive days or greater." CAR 604. The four-member HRC Appeals Review Panel, including membership of the Command Surgeon, unanimously voted to deny Plaintiff's appeal.  The panel noted that "[d]ocumentation dated 36 days after event state SM had several limitations in basic functional mobility such as bathing and dressing, with all ADLs limited.  The extent of ADL limitation is not addressed.  This statement was added to therapy notes until 26 March 2012.  SM was placed in a rigid neck brace that was removed 57 days after event." CAR 606.  Under "Physician Recommendation," the record

6

provides: "Dr. J recommended denial based on presented data suggested at worst modified independent in ADLs." Id.

On July 11, 2014, Plaintiff submitted a final administrative appeal in the form of an Application for Correction of Military Record.  The appeal contained all the medical records discussed above and another letter from Plaintiff's wife, Wendy Blackwood, indicating in relevant part:

> My husband was temporarily paralyzed and suffered traumatic injuries to his vertebrae, fracturing C3 and C7 and severe nerve damage.   Due to these injuries he required 24 hour physical assistance in which I was his primary caretaker. He required my assistance consecutively with bathing, transferring, dressing, eating and toileting from 12 December 2011 until approximately 19 April 2012.
>
> My husband was unable to clean his entire body without my assistance due to his injuries.  I had to bathe and perform his basic cleansing routines such as brushing his teeth, applying lotion, shampooing hair, etc.  I had to transport him in and out of the shower.  I had to put on his clothes, shoes, socks and tie his shoes because he was unable to perform the task himself.  I had to physically transport his food and drink to his mouth because he was incapable of eating and drinking on his own because of the spinal and nerve trauma.
>
> I assisted him when he had to urinate and have a bowel movement. He could not go to the bathroom on his own without assistance from me. He was unable to move his body or head by himself or move himself into or out of his bed and chair without my assistance.

CAR 630.   Prior to the final denial of Plaintiff's administrative appeals, Dr. Alan A. Januszewicz performed an additional TSGLI Program Physician Review finding that "[t]here is insufficient data presented supporting the claimed loss.  What data is presented seems to suggest at worst modified independence in ADLs." CAR 651.

The ABCMR denied Plaintiff's appeal via letter dated August 27, 2014 in relevant part stating:

DISCUSSION AND CONCLUSIONS:

1. The applicant sustained an injury on 11 December 2011 during training. He was hospitalized for 2 nights/3 days at Fort Hood, TX. He was placed in a rigid neck brace but this was removed 57 days after the event. A medical note, dated 28 December 2011, documented sensory decrease to 50 percent in the right hand and 20 percent in the left hand and trace weakness in the right hand only, with strength improving. Another note, dated 19 April 2012, documented healed vertebrae, radiographic evidence of a cord scar, odd sensation with neck flexion and weakness of upper back muscles.

2. He filed a TSGLI claim in 2012. He appears to have claimed OTI TSGLI for ADL loss. However, his claim was denied. He submitted another claim in April 2013. He indicated:
- he was unable to bathe independently from 12 December 2011 to 19 April 2012; he needed physical (hands-on) assistance and standby assistance
- he was unable to dress independently from 12 December 2011 to 19 April 2012; he needed physical assistance (hands-on) and standby assistance
- a medical professional in Family Practice stated he had not observed the applicant's loss but reviewed his medical records and based on that review he determined the applicant was capable of handling his own affairs

3. Although his records contained documentation dated over a month after the event indicating he did have several limitations in basic functional mobility such as bathing and dressing with all ADLs limited the extent of the ADL limitations was not addressed. None of the submitted documents indicated the injury rendered him incapable of performing any ADLs.

4. In order to qualify, the applicant must have been unable to independently perform at least 2 ADLs for at least 30 consecutive days. A member is considered unable to perform an activity. A member is considered unable to perform an activity independently if he or she requires at least one of the following with which they would be incapable of performing the task: physical assistance (hands on), stand by assistance (within arm's reach), or verbal assistance (must be instructed). In addition, the

ADL loss must have been certified by a healthcare provider and substantiated by appropriate documentation, such as occupational therapy/physical therapy reports, discharge summaries, and other medical documentation.

5. TSGLI analysts strive to apply a "reasonable person" standard to each claim with a bias in favor of the claimant while still maintaining a high degree of internal consistency among similar claims. There is insufficient medical documentation indicating a physical incapacity of performing ADLs without assistance for 30 consecutive days. In view of the foregoing, there is no basis for granting the applicant's requested relief.

CAR 613-614 (emphasis original).

On May 23, 2015, Plaintiff filed this action challenging the Army's denial of his TSGLI benefits.

**B. Applicable Law/Standard of Review**

Pursuant to 38 U.S.C. § 1980A(a) and (b), a service member is entitled to TSGLI benefits if he or she sustained a "traumatic injury . . . that results in a qualifying loss." 38 U.S.C. § 1980A(a)(1).   The statute defines a "qualifying loss" as "the inability to carry out the activities of daily living resulting from traumatic injury." 38 U.S.C. § 1980A(b)(1).   The "inability to carry out the activities of daily living" is further defined as "the inability to independently perform two or more of the following six functions: (i) Bathing, (ii) Continence, (iii) Dressing, (iv) Eating, (v) Toileting, [and] (vi) Transferring."   38 U.S.C. § 1980A(b)(2)(D)(i)-(vi); 38 C.F.R. § 9.20(e)(6)(vi).   Benefits will only become available after a service member has experienced at least 15 consecutive days of ADL loss (if due to a traumatic brain injury) or 30 consecutive days of ADL loss (if due to something other than a traumatic brain injury). 38 C.F.R. § 9.20(f)(17), (20).   TSGLI will pay $25,000 for each consecutive 30–day period of ADL loss, up to a maximum of $100,000 for 120 consecutive days.   38 C.F.R. § 9.20(f).

9

"The statute gives district courts jurisdiction to review administrative decisions with regard to TSGLI claims. However, the jurisdictional grant does not set forth the standard of review to be used by the court." <u>Weller v. United States</u>, 2014 WL 5320133, *2 (M.D. La. Oct. 17, 2014)(citing 38 U.S.C. § 1975).  In these circumstances, "[c]hallenges to the decisions of military correction boards, such as the [ABCMR], are reviewable under the [Administrative Procedure Act ("APA")], which empowers courts to set aside final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .'" <u>Espinoza v. United States</u>, 2016 WL 1181742, *2 (W.D. Ky. Mar. 25, 2016)(citing 5 U.S.C. § 706(2)(A)).  "The arbitrary and capricious standard of review requires that deference be afforded to the reviewing agency." <u>Id.</u> (citing <u>Maple Drive Farms Ltd. Partnership v. Vilsack</u>, 781 F.3d 837, 852 (6th Cir. 2015)).  "When reviewing an agency action, we must assess, among other matters, whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . That task involves examining the reasons for agency decisions—or, as the case may be, the absence of such reasons." <u>Judulang v. Holder</u>, 132 S.Ct. 476, 483 (2011)(internal citations omitted).  <u>See also</u> <u>Koffarnus</u>, 2016 WL 1261155, *5.  An agency decision is arbitrary and capricious when the agency:

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

<u>National Ass'n of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 644, 658 (2007).

### C.  Benefit of the Doubt Rule

The Plaintiff argues that the ABCMR should have applied the "benefit of the doubt" rule to his claim for traumatic injury benefits.   Under the benefit of the doubt rule, "[w]hen there is

an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." 38 U.S.C. § 5107.  See Koffarnus, 2016 WL 1261155, * 6 n. 6.   Plaintiff did not raise this argument before the ABCMR.  See CAR 622, 623, 627, 628, 634 (citing preponderance of the evidence as the appropriate standard of review for the ABCMR).  This same issue was addressed by the district court in Koffarnus who declined to consider this argument.  "'The administrative waiver doctrine, commonly referred to as issue exhaustion, provides that it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved.'"  Koffarnus, 2016 WL 1261155, *6 (quoting Coalition for Government Procurement v. Federal Prison Indus., Inc., 365 F.3d 435, 461–62 (6th Cir. 2004)).  Based on this law, the Court will not consider the Plaintiff's argument that the ABCMR should have applied the benefit of the doubt rule because Plaintiff did not raise it before the ABCMR.

### D.  Whether ABCMR acted arbitrarily and capriciously

The United States concedes that Plaintiff suffered a covered traumatic injury. (Defendant's Motion at 3 n. 5.)  The dispute pertains to whether Plaintiff suffered a "qualifying loss" under the TSGLI schedule of losses.  The United States argues that the ABCMR's decision to deny Plaintiff's TSGLI claim was reasonable because the Plaintiff failed to establish that he could not independently perform at least two or more of the ADLs for at least 30 days as required under the TSGLI program.

After a review of the administrative record, the Court finds that the ABCMR acted arbitrarily and capriciously in denying Plaintiff's claim for traumatic injury benefits for at least 30 days as required under the TSGLI program.  The documents submitted by Plaintiff contradict

the ABCMR's conclusion that "[t]here is insufficient medical documentation indicating a physical incapacity of performing ADLs without assistance for 30 consecutive days." CAR 614.

First, Plaintiff's treating physician certified Plaintiff's ADLs for the relevant time period. Plaintiff filed his initial application for TSGLI benefits on May 12, 2012, citing an injury he sustained on December 12, 2011, when he fell six feet from an obstacle and landed on his head. Plaintiff suffered a fracture of the spinous process of C3 and facet of C7 and a spinal cord contusion from edema.  Plaintiff's original medical certification, signed by Plaintiff's treating orthopedic surgeon Dr. Chris Chaput, indicated that Plaintiff had ongoing inabilities to bathe independently from December 15, 2011 to February 17, 2012 and to dress independently from December 15, 2011 to February 20, 2012, as well as inabilities to eat independently, toilet independently, and transfer independently for approximately a month after the accident, all of which requiring hands-on and stand-by assistance during the periods indicated. CAR 14-16.  Dr. Chaput certified that he had observed Plaintiff's loss.

As noted by the Court in <u>Fail v. USA</u>, 2013 WL 5418169 (D. Colo. Sep. 27, 2013),  "the Army is [not] free to disregard or give minimal deference to the certifying professional's opinions in all circumstances." <u>Id</u>. at *7.  As noted by the district court, "[t]here will often be circumstances where some weight, or even considerable weight, should be given to the certifying professional's opinions regarding limitations." <u>Id</u>.

> Factors that might inform the question of how much deference should be afforded by the Army to the certifying professional's opinion as to the nature and extent of a claimant's limitations may include: (i) the extent to which the certifying profession[al] is offering percipient testimony about the claimant's limitations or treatment, or the extent to which the professional is simply interpreting others' medical records; (ii) the extent to which the certifying professional is involved with the ongoing care of the claimant for the same injury or limitations; (iii) the length of time between the injury, the limitations, and the professional's review

and certification; (iv) the clarity (or lack thereof) of the underlying medical records; and (v) the complexity of the claimant's injuries and treatment, among many other factors.

Id. *6-7.

Here, a medical professional who actually supplied treatment to the Plaintiff completed the original certification.  Dr. Chaput's certification of Plaintiff's limitations are based on percipient testimony involving direct observation of the Plaintiff's limitations and on his ongoing care of the Plaintiff during the relevant time period.  Dr. Chaput filled out the certification approximately four months after the original injury and right before Plaintiff's initial application of TSGLI benefits.  Additionally, in Plaintiff's subsequent requests for reconsideration and appeals, Plaintiff submitted the certification of Dr. Dennis Hopkins.  Based upon his review of Plaintiff's medical records, Dr. Hopkins confirmed Dr. Chaput's assessment of Plaintiff's inabilities to bathe and dress independently concluding that Plaintiff needed assistance to bathe lower body, dry, dress, and tie shoes during the period certified by Dr. Chaput.  CAR 131.  In its Discussions and Conclusions section of the final denial of benefits, the ABCMR did not address the opinion of Plaintiff's treating physician.

Second, in addition to the medical certification from his treating physician, Plaintiff submitted an April 30, 2012, letter from his wife, Wendy Blackwood, in which she stated that Plaintiff could not bathe or dress without assistance from her.  CAR 039.  She further stated that "I had to bathe and perform his basic cleansing routines i.e. applying lotion, shampooing hair, etc.  I had to transport him in and out of the tub and shower.  . . . I had to put on his clothes, shoes, socks, and tie his shoes because he was unable to put them on himself." Id.  Interestingly, the ABCMR made no reference to this letter or the additional letter tendered by Plaintiff's wife in May of 2013 even though both letters provided significant support for his claim, including the

type or duration of assistance that Plaintiff required.  See Fail, 2013 WL 5418169, *13. "When the medical records do not explicitly address a patient's inability to independently perform the activities of daily living, letters from caregivers provide strong corroborating evidence of a patient's claim." Koffarnus, 2016 WL 1261155, *7 ("At the very least, the Board needed to respond to Koffarnus's spouse's letter, which corroborated her claim and was not frivolous."). See also Conner v. U.S. Dept. of the Army, 6 F. Supp. 3d 717, 723 (W.D. Ky. 2014) (an agency decision may be arbitrary and capricious if the agency does not address a nonfrivolous argument made by plaintiff). The ABCMR either failed to consider this evidence or simply discounted it without explanation, either of which would clearly be arbitrary and capricious action.

Third, medical records contained in the Administrative Record corroborate Dr. Chaput's assessment of Plaintiff's incapacity for performing at least two ADLs without assistance for at least 60 consecutive days.  The medical records reflect that Plaintiff suffered a fracture of the spinous process of C3 and facet of C7 and a spinal cord contusion from edema.  He was hospitalized for three days.  Orthopedic specialists placed Plaintiff in a rigid cervical collar with instructions to avoid AROM in the cervical spine.  Over a month after the injury, Plaintiff presented to a rehabilitation facility and his functional evaluation indicated that he was experiencing several limitations in basic functional mobility such as bathing and dressing.  The therapy notes indicated that "[a]ll ADLs are limited and patient is not performing job duties [a]t this time." CAR 920.  Additionally, the record reflected that "[a]ll active movements were limited by over 75%." Id.  Dr. Chaput removed Plaintiff's rigid cervical collar 57 days after the injury, but he placed very limited restrictions on Plaintiff prohibiting AROM in the cervical spine until his next 6 week checkup. Additional records from Integrity Rehab and Home Health dated February 22, 2012, continued to note that "[a]ll active movements were limited by over

14

75%." CAR 329.   These medical records, considered in light of the physician's certifications and Plaintiff's spouse's letters, contradict the ABCMR's complete denial of TSGLI benefits. Koffarnus, 2016 WL 1261155,  *8 (citing National Ass'n of Home Builders, 551 U.S. at 658 (a reviewing court may find an agency decision arbitrary and capricious if the decision runs counter to the evidence before the agency).

Based on this evidence, Plaintiff seeks to recover TSGLI benefits for 120 consecutive days of ADL loss from December 12, 2011 to April 19, 2012.  However, the Court finds that it was reasonable for the ABCMR to deny TSGLI benefits for the period after February 17, 2012. As noted above, in 2013 Plaintiff submitted the certification of Dr. Dennis Hopkins who reviewed Plaintiff's medical records.  Dr. Hopkins not only confirmed Dr. Chaput's assessment of Plaintiff's inabilities to bathe and dress independently for over 60 days, but also concluded that Plaintiff needed assistance to bathe lower body, dry, dress, and tie shoes from the date of the injury until April 19, 2012.  CAR 131.  Both the medical records review by Dr. Hopkins and the May 2013 letter by Plaintiff's wife include certifications that Plaintiff was unable to independently perform at least two or more of the ADLs until April 19, 2012.  However, these statements contradict the treating physician's percipient certification rendered around the time of the injury and recovery process.  "The Court does not opine as to the reason for this disparity; it is enough to observe that, due to conflicting evidence in the record . . ., the Army did not act arbitrarily or capriciously in choosing to not credit" this evidence.  Fail, 2013 WL 5418169, *12.

For these reasons, the Court finds that the ABCMR's decision to deny Plaintiff's final appeal for TSGLI benefits was arbitrary and capricious because the decision ran counter to the evidence presented.  The record reflects that Plaintiff was incapable of independently performing at least two ADLs for at least 60 days.  Having found the ABCMR's decision arbitrary and

15

capricious, the Court will vacate the decision.  The Court will deny the United States' motion for summary judgment as well.

### E. Summary Judgment in Favor of Plaintiff

Plaintiff has not filed a cross motion for summary judgment, though he asks the Court to grant summary judgment in his favor *sua sponte*. (Plaintiff's Response at 39 n. 8).  <u>See also</u> <u>Koffarnus</u>, 2016 WL 1261155, *9-10.  The United States acknowledged that it is on notice of the Plaintiff's purported cross motion.  "Under Rule 56, the Court may grant summary judgment for a nonmovant after giving notice and reasonable time to respond. <u>See</u> Fed. R. Civ. P. 56(f)(1)." <u>Id</u>. at 10.  Just as in <u>Koffarnus</u>, the Court finds that the United States was on notice that the Court may grant summary judgment for Plaintiff.  The United States had a reasonable time to respond because it acknowledged Plaintiff's request for *sua sponte* relief in its reply brief.  Accordingly, the Court will grant in part summary judgment to Plaintiff *sua sponte*.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, United States of America, to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for summary judgment pursuant to Fed. R. Civ. P. 56 [DN 12] is **DENIED**.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED IN PART** in favor of Plaintiff, Deval Blackwood. The decision of the United States Army Board for Correction of Military Records is **VACATED**.  The Court **REMANDS** the case to the Board for proceedings not inconsistent with this Opinion. A Judgment will be entered consistent with this Opinion.

cc: counsel of record

Joseph H. McKinley, Jr., Chief Judge
United States District Court

May 9, 2016